PETER H. VAN RIPER, Respondent, *v.* CONRAD POPPENHAUSEN and IWAN VAN AUW, Executors, etc., of HERMANN A. SCHLEICHER, deceased, impleaded with JOHN G. PERSEL, Appellants.

The removal of the place of business of a " limited partnership" from the county where it was established, and where the certificate required by the statute has been duly filed in the county clerk's office, to another county, and the continuance of business there, without filing in the clerk's office of that county any new certificate, renders it a general partnership, and the special partners liable as general partners.

An action may be maintained against the representatives of a deceased partner upon a partnership liability, when it is proved that the surviving partner is wholly insolvent, without first exhausting the remedy at law against him.

Costs in equity suits, even against executors, are within the discretion of the court.

The legal meaning of " insolvency" defined by PECKHAM, J.

(Argued October 17, 1870; decided November 22, 1870.)

APPEAL from a judgment of the late General Term of the second district, affirming a judgment of the Special Term in favor of the plaintiff, which judgment is based upon the following findings of fact.

On or about the 6th day of October, 1865, defendant, John G. Perzel, as general partner, and Herman A. Schleicher as special partner, entered into and formed a limited partnership in the business of manufacturing woolen goods, in the city and county of New York, under the name of " John G. Perzel."

The proper certificate, dated October 6th, 1865, was filed in the office of the county clerk of New York county, and other proceedings were then had by the partners, in the manner required by the statute in such case made and provided, for the conducting and carrying on such business in the county of New York.

This special partnership commenced, and carried on the business of manufacturing woolen goods, in the city and

county of New York, and continued to do so up to about the 6th day of January, 1866.

On the 1st day of November, 1865, the firm of "John G. Perzel," bought a piece of real estate, and factory, with its appurtenances in the county of Kings, and the said Herman A. Schleicher loaned it the money with which to purchase this real estate, and took the title to the land in his own name, as security for the loan.

On or about the 6th day of January, 1866, the firm ceased the manufacture of woolen goods in the city of New York, and gave up their place of business in said county of New York; on or about the 17th of June thereafter, they commenced the manufacture of woolen goods at their factory, in the county of Kings, having spent the time intermediate their giving up their place of business in the county of New York, and their commencing the business of manufacturing woolen goods in the county of Kings, in fitting up a factory, and place of business in Kings county.

The firm filed in the office of the clerk of the county of Kings no transcript of their certificate of special partnership, and no certificate was ever filed or recorded in the county of Kings.

Herman A. Schleicher departed this life on the 17th day of July, 1866, leaving a last will and testament, whereby he appointed the defendants, Poppenhusen and Von Auw, his executors, and they duly qualified as such.

The plaintiff sold and delivered, at Kings county, to the firm of "John G. Perzel," the goods mentioned and set forth in the complaint at the times and dates therein mentioned.

The firm of "John G. Perzel" and the said "John G. Perzel" were insolvent before the commencement of the action; and at the time the action was commenced, the plaintiff was not able to obtain payment of the indebtedness to him without recourse to the estate of the deceased partner; but no action to recover his claim, or any part thereof, was

Statement of case.

ever commenced against the defendant, John G. Perzel, individually, or as surviving partner.

*Ira D. Warren,* for the appellants, on the principles of statutory construction, cited Dwarris on Statutes, 742; *Hubbard* v. *Johnson* (3 Taunt., 177); *Tuttle* v. *Hartwell* (5 T. R., 429).

That the statute as to filing certificates was merely directory, he cited *Cole* v. *Greene* (6 Man. & G., 872, 890); Sedgwick on Stat. Law, 371, 372; *People* v. *Doe* (1 Mich., 452, 453); *City of New Orleans* v. *St. Rowens* (9 La., 173); *Colt* v. *Evans* (12 Conn., 243); *Savage* v. *Walsh* (26 Ala., 620); *Osgood* v. *Holland* (8 Verm., 276, 373); *People* v. *Supervisors of Chenango* (4 Seld., 328); *People* v. *Suprs. of Ulster Co.* (34 N. Y., 272); *Hardman* v. *Bowen* (39 N. Y., 200); *Rowen* v. *Argall* (24 Wend., 504); *People* v. *Draper* (15 N. Y., 532).

On the general question of interpretation, *Dudley* v. *Mayhew* (3 N. Y., 9); *Smith* v. *Drew* (5 Mass., 515); *Clark* v. *Brown* (18 Wend., 220, 221); 2 Coke's Just., 74, 118; Bacon's Abr., 16; Sedgwick on Stat. Law, 92; *Madison Co. Bank* v. *Gould* (5 Hill, 312).

That the action could not be maintained against the representatives of the deceased partner, until the remedy against the survivor had been exhausted, he cited *Craig* v. *Parkis* (40 N. Y., 181); *Voorhis* v. *Baxter* (1 Abb., 45); *Tracy* v. *Suydam* (30 Barb., 115). That the court erred in granting costs against the executors, *Bradley* v. *Burwell* (3 Den., 252); *Bullock* v. *Bogardus* (3 Den., 276); *Fox* v. *Fox* (22 How., 457); *Belden* v. *Knowlton* (3 Sand., 758); *Foot* v. *Gooding* (9 Barb., 388); *Knapp* v. *Curtis* (6 Hill, 386); *Nicholson* v. *Showerman* (6 Wend., 554); *Robert* v. *Ditman* (7 Wend., 522); *Giles* v. *Lyon, Admr.* (4 Com., 600).

*Joshua M. Van Cott,* for the respondent, upon the point that the omission to file the certificate was fatal to the testator's exemption from general liability, although not so

expressly provided in the statute, he cited in analogy *Madison Co. Bank* v. *Gould* (5 Hill, 307); *Ward* v. *Newell* (42 Barb., 482); *Ely* v. *Carnley* (19 N. Y., 496); *N. Y. Life Ins. Co.* v. *White* (17 N. Y., 469); *Argall* v. *Smith* (3 Den., 435).

That the insolvency of the surviving partner authorizes an action against the representatives of the deceased partner, *Reisendyke* v. *Kane* (1 Gallison, 385); *Sturges* v. *Beach* (1 Conn., 509); *Alsop* v. *Mather* (8 Conn. R., 587); *Filley* v. *Phelps* (18 id., 294); *Trustees of Leake and Watts* v. *Lawrence* (11 Paige, 80); S. C., 2 Den., 577; *Hammersley* v. *Lambert* (2 J. Ch. R., 508); *Voorhees* v. *Child's Exr.* (17 N. Y., 354); *Long* v. *Repple* (1 Binney, 123); *Caldwell* v. *Stileman* (1 Rawle, 212); *York* v. *Peck* (11 Barb., 644, 8, 9); *Williamson* v. *Henderson* (1 My. & K.); 1 Story's Eq. Pl., § 167; *Slatter* v. *Carroll* (2 Sandf. Ch. R., 573).

That the costs were in the discretion of the court, he cited *Murray* v. *Smith* (9 Bosw., 689); *York* v. *Peck, supra;* *Sands* v. *Craft* (18 id., 408); Code, § 317; 3 R. S., 5th ed., 201.

By the Court—PECKHAM, J. The action was for goods sold and delivered to John G. Perzel, and the testator, as general partners. The facts, as found and conceded, are that the testator and John G. Perzel, in October, 1865, formed a special partnership in the city of New York; Perzel being the general, and the testator the special partner. The special partner contributed $20,000 in cash to the business. The law in respect to special or limited partnerships, was in all respects complied with for the county of New York. The certificate was filed and recorded there, and the firm proceeded with their business from October, 1865, to January 6th, 1866, when the firm discontinued their business in New York of manufacturing woolen goods, and gave up their place of business there.

On the 12th day of June, 1866, the firm commenced the same business in the county of Kings, in a manufactory they

had built there. But no certificate of the terms of partnership, or transcript of the certificate filed in New York was ever filed or recorded in Kings county. It does not appear that the firm ever had any place of business at any time other than stated. The question is, was this a general or special partnership in Kings county ?

It is true that the statute, in regard to "limited partnerships," does not, in so many words, require a statement in the certificate of its terms of the place where the firm will do business; but looking at its different provisions, it is entirely clear that the principal or main place of business must be where the certificate of its terms is filed and recorded; at least a place of business must be there.

After stating what the certificate of the terms of the special copartnerships shall contain, the act provides that it shall be filed in the office of the clerk of the county in which the "principal place of business" shall be situated.

If the partnership shall have places of business situated in different counties, a transcript of the certificate duly certified, shall be filed, etc., in the office of the clerk of every such county." (1 R. S., 764, § 6.)

A publication of the terms of the partnership for six weeks in two newspapers, published in the senate district, in which "their business shall be carried on," is also required ; otherwise " the partnership shall be deemed general." (§ 9.)

It is also provided, that no such partnership shall be deemed to have been formed "until a certificate shall have been made, acknowledged, filed and recorded," etc., and an affidavit of the amount of cash capital paid in, shall be filed.

Thus the act carefully and fully provides for filing a statement of the terms of the partnership, and for a publication thereof in the place where their business is carried on, so that the business public there may have full knowledge of the situation of the firm.

But the act makes no provision for, and evidently does not contemplate a removal by the firm of its place of business to another county.

It does provide for branches of the business of the firm in different counties. In such a case a certified copy of the certificate must be filed in each of said counties, but not for a removal. That is left wholly unprovided for.

So that, if a firm entirely discontinues business in the original county and go to another, the act affords them no protection as special partners in this new location.

To allow a firm who had complied with the statute to do business as special partners in New York county, to remove their only place of business to Buffalo, and proceed there without filing any certificate or making any publication, would substantially nullify those provisions.

It thus appears that the defendants, so far as respects their business in Kings county, were general and not special partners. The plaintiff sold them goods in Kings county, while they were doing business there, and as to him, they are therefore general partners.

This may well be regarded as a remedial statute, and it should receive a liberal construction, with a view "to suppress the mischief and advance the remedy."

For many years it has been deemed desirable for the benefit of trade and to aid young men of integrity and capacity, but without means, that these limited partnerships should be formed.

If the special partner substantially comply with the requirements of the act, he should hazard nothing but his special capital in a business which he cannot personally conduct.

It is not every technical violation, every failure to comply with the letter of the law, that should deprive him of such exemption. Thus it was held that a mistake in publishing the time when a partnership commences, stating it to be the 16th of November, when it should have been October, did not make them general partners. (*The Mad. Co. Bank* v. *Gould*, 5 Hill, 309, 311.)

It is unnecessary in this case to decide whether the omission to file a transcript of the certificate of the terms of the

partnership in another county, when the firm established a branch business there, would make them general partners.

It is also urged that this suit cannot be maintained against these executors until the plaintiff has first exhausted his remedy at law against the surviving member of the firm, or unless he has been discharged as a bankrupt or insolvent.

It is generally stated in the books, that the firm property must first be applied to the payment of a firm debt before resort can be had to the estate of a deceased partner, unless the survivor be insolvent. ( *Voorhis* v. *Child's Executors*, 17 N. Y., 354.)

The true principle undoubtedly is, that the estate of the deceased partner is only liable for the deficiency of the demand remaining, after the assets of the firm have been applied toward its extinguishment.

But we have been referred to no case or principle that requires the remedy at law to be first exhausted against the surviving partner before resort can be had to the estate of the deceased partner.

If it can be shown, that the surviving member of the firm is without means, by any common law proof, we see no objection to that kind of evidence.

In *Craig* v. *Parkis* (40 N. Y., 181), it was held that the remedy at law must first be exhausted, because that was the legal effect of the guaranty, such was the covenant of the guarantor, and he could be held only upon his covenant. See *Rysendyke* v. *Kane* (1 Gall., 385); *Lawrence* v. *Trustees of L. and W. etc. Home* (2 Den., 577); *Alsoss* v. *Mather* (8 Conn., 587); *Filley* v. *Phelps* (18 Conn., 294); *Hammersly* v. *Lambert* (2 G. Ch. 508); *Jenkins* v. *De Groot* (1 Ca. Ca. in Error, 122); *Slather* v. *Carroll* (2 Sand. Ch. R., 573, 580); *Gray* v. *Chiswell* (9 Ves., Jr., 125); *Caldwell* v. *Stileman* (1 Rawle, 212).

In nearly all of these cases except the last, the surviving partner was a discharged bankrupt, or an execution at law had been returned unsatisfied against him; but the court uniformly recognized the rule here stated, or did not deny it.

Statement of case.

In the last case, the action was sustained without an execution returned.

The only finding here is, that the surviving partner is insolvent, and it is urged that he may be insolvent and still be able to pay a large per centage of his debts. The term insolvent usually means one whose estate is not sufficient to pay his debts, or one who is unable to pay all his debts from his own means. (*Herrick* v. *Borst*, 4 Hill, 650.)

The evidence in this case is not returned, and every intendment is in favor of the judgment. It is an old and a sound rule that he who alleges error must affirmatively show it. (*Grant* v. *Morse*, 22 N. Y. R., 323.)

If the surviving partner, Perzell, had been utterly without means, then he was within the term insolvent.

If the facts were otherwise, the defendants should have shown them, and had findings accordingly.

The remaining question, that the court erroneously awarded costs against the executors, contrary to the provisions of the Code, has been decided in a case before the late Court of Appeals against the defendants. Holding that costs in equity cases are in the discretion of the court to grant or refuse, we do not incline to reconsider the question. (*Barker* v. *White*, 3 Keyes, 617.)

Judgment affirmed with costs.

All the judges concurring, judgment affirmed.