BENJAMIN C. MILLER, Respondent, *v.* FIDELIA R. MORTON and JENNIE MORTON CARY, Appellants, Impleaded with Another.

*Action in the Supreme Court under Code of Civ. Proc.* § 1837 — *failure to account in the Surrogate's Court* — *no bar to it* — *excessive expenditures by an administratrix* — *liability of the next of kin therefor.*

The fact that there has been no judicial settlement in the Surrogate's Court of the accounts of an administratrix, furnishes no objection to the determination, on the merits, of an action brought against the next of kin of the decedent, pursuant to section 1837 of the Code of Civil Procedure.

It is within the equitable powers of the Supreme Court to require the personal representatives of deceased persons to render an account with a view to the relief sought, dependent upon such accounting. The jurisdiction of the surrogate in that respect is not exclusive, but concurrent with that of the Supreme Court.

Upon the trial of an action brought by a creditor of a decedent's estate, under section 1837 of the Code of Civil Procedure to recover from the next of kin the amount remaining due upon certain judgments recovered against the decedent in his lifetime, it appeared that letters of administration had been issued upon the decedent's estate in July, 1883; that in July, 1884, the administratrix published a notice to creditors to present their claims to her on or before January 5, 1885, and that no claim founded upon the judgments in question had been presented to her.

It further appeared that in December, 1892, the plaintiff instituted a proceeding in the Surrogate's Court to compel the administratrix to pay the judgments, which resulted in a determination that there remained unexpended, in her hands as such administratrix, after deducting her commissions and the expenses of the accounting and the sum allowed for costs, the sum of $335.04, which, by the decree of final settlement, she was directed to pay upon the plaintiff's claim.

It appeared that the administratrix had paid for funeral expenses of her decedent, including burial lot and monument, $1,934.35, the expense of the monument being $1,400; that she had also paid for improvements upon real estate which descended to two daughters of the decedent, subject to her dower right, $315.37; that she had advanced to the daughter Helen $475.77, and that she had paid the plaintiff on account of his judgments the sum of money directed by the surrogate's decree to be paid to him.

The referee found that it was understood between the administratrix and her daughters that the amount paid to the daughter Helen should be applied towards her distributive share in her father's estate; that the money was paid for such improvements and expenses of the funeral, including burial lot and monument, at the request of the two daughters; that the latter expenses were excessive and that no more than $1,000 should be allowed for them. The

referee also found that any part of the estate paid over, after the death of Helen M. Vick, for her funeral expenses was the property of the defendants Fidelia R. Morton and Jennie M. Cary, as said Helen M. Vick in her lifetime had been paid her distributive share.

*Held,* that in view of the limited amount of the estate of the decedent the conclusion of the referee in regard to the sum paid for funeral expenses, including the lot and monument, was justified;

That at the expiration of six months after the completed publication of the notice to creditors, the administratrix had reason to suppose that no creditors existed whose claims had not been presented, and she was then at liberty to make distribution of the assets;

That the expenditure $1,400 having been made by the administratrix with no knowledge or notice of the plaintiff's claim, and with the consent of the next of kin, it must be assumed that the parties acted in good faith, and that the plaintiff was estopped from charging the administratrix with liability for the moneys so expended, although such expenditure was excessive;

That the sum of money expended in improvements and repairs upon the real estate and that expended in the funeral expenses of the daughter Helen were not appropriated to purposes within the scope of the authority of the administratrix;

That as to creditors such daughter was alone responsible on account of the amount so received by her, as her distributive share of the estate and, she having died, her estate must be deemed chargeable with such amount.

APPEAL by the defendants, Fidelia R. Morton and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Monroe on the 15th day of April, 1895, upon the report of a referee, and also from the findings contained in said report.

The action was brought to obtain judgment that the defendants, Fidelia R. Morton, Jennie M. Cary and Edward H. Vick, as administrators of the estate of Helen M. Vick, deceased, may each be adjudged to pay to the plaintiff one-third of the sum remaining unpaid upon certain judgments against John Morton.

The referee to whom the issues were referred to hear and determine, found, among other things :

That John Morton died on or about the 23d day of March, 1883, intestate, leaving him surviving his widow, the defendant Fidelia R. Morton, and as his only next of kin his two daughters, the defendant Jennie Morton Cary and Helen Morton Vick, now deceased.

That said Helen M. Vick died on or about the 25th day of May, 1886, intestate, and the defendant Edward H. Vick was, on or about

the 12th day of July, 1892, duly appointed administrator of her estate by the surrogate of the county of Monroe, N. Y., and is still such administrator.

That the defendant Fidelia R. Morton was, by an order of the surrogate of Monroe county, N. Y., on the 12th day of July, 1883, duly appointed administrator of the estate of said John Morton, deceased.

That said administrator received into her hands, as administrator of said John Morton, deceased, $3,540. Out of such sum she paid for funeral expenses, burial lot and monument, $1,934.35, paying for the monument $1,400; also, upon repairs and improvements on real estate, which descended to said daughters subject to her right of dower, $315.37, and she advanced and paid to Helen M. Vick $475.77; she paid to the plaintiff in this action, to apply upon his judgments, $335.04, and she retained for commission and expenses of administration, $247.25, and the balance was paid out towards the funeral expenses of Helen M. Vick.

That the amount so paid to Helen M. Vick was agreed by her, and by Fidelia R. Morton and Jennie Morton Cary, should be applied toward the distributive share of said Helen M. Vick in and to her father's estate, and the money paid out for repairs and improvements and for the expenses of the monument, burial lot and funeral was paid by Fidelia R. Morton, at the instance and request of Jennie Morton Cary and Helen M. Vick.

That the amount paid for funeral and burial expenses, and for monument was excessive in amount, and $1,000 is a liberal sum for such expenses, and this sum is allowed toward the same, and the defendants are chargeable with the excess, to wit, $934.35.

That the sum of money which the administrator legally paid out of the estate is the sum of $1,582.29, made up of $1,000 for funeral and burial expenses and monument, $247.25 commission and expenses upon her accounting, and $335.04 paid upon the judgments mentioned in the complaint in this action, leaving the sum of $1,957.71 to be distributed to said Fidelia R. Morton and her two daughters.

That the distributive share belonging to Fidelia R. Morton, Jennie Morton Cary and Helen M. Vick was one-third of said sum aforesaid, or $652.57.

That said sum of $652.57 was paid to each of said persons to whom it belonged, such payment either being made directly to such persons, as in the case of Helen M. Vick, who received part in cash, or by being paid according to the directions of those to whom the same belonged.

That any part of the estate paid after the death of Helen M. Vick, for her funeral expenses, was the property of the defendants Fidelia R. Morton and Jennie M. Cary, as said Helen M. Vick in her lifetime had been paid her distributive share.

The referee found among other conclusions of law :

That the direction, by either of the next of kin, as to any payment being made out of the estate in the hands of the administrator, was the same in effect as though the same had been paid to those entitled to the same, and they in turn paid the money over in the manner to which it was paid, and that in making any payment for funeral and burial expenses or monument, or for repairs and improvements, Fidelia R. Morton, the administrator, acted as principal in paying out her share of the estate and as agent for the others in paying out their shares of the estate as they gave directions for the payment of the same.

That whatever sum may have been paid to Helen M. Vick in her lifetime, either being paid to her or being paid by the administrator at her request and by her direction, which exceeds her distributive share, was in effect a gift to her from her mother or sister or both of them, and she in effect only received from the estate as her distributive share one-third thereof.

That the plaintiff was entitled to recover from each of the defendants in this action one-third of the amount now due upon his two judgments, or the sum of $224.36, with costs to be apportioned and taxed as is provided by section 1839 of the Code of Civil Procedure.

*Louis H. Jack*, for the appellants.

*W. E. Davis*, for the respondent.

BRADLEY, J. :

John Morton died intestate in March, 1883, leaving him surviving the defendant Fidelia R. Morton, his widow, the defendant Jennie

M. Cary and Helen M. Vick, the intestate of the defendant administrator, his children and next of kin. In August 1883, two judgments were entered against Morton, one for $219.01 and the other for $374.02, damages and costs upon verdicts rendered against him prior to his death in favor of one Northrup. Those judgments, through mesne transfers, were assigned to the plaintiff, who brought this action in May, 1894, against the defendants as the surviving wife and next of kin of Morton, to recover the amount remaining due upon those judgments pursuant to the statute. (Code Civ. Proc. § 1837.)

Letters of administration on the estate of Morton were duly issued to his widow in July, 1883, and the assets which came to her hands as such administratrix amounted to $3,540.

In July, 1884, she, by notice then and thereafter duly published for six months, gave notice to creditors to exhibit their claims to her on or before January 5, 1885. No claim founded upon the judgments before mentioned was presented to her.

In December, 1892, the plaintiff by petition instituted a proceeding in the Surrogate's Court of Monroe county to require the administratrix to pay the judgments, and in February, 1894, it resulted in the determination that there remained unexpended in her hands the sum of $626.85, which, after deducting her commissions, with the expenses of her accounting and the sum allowed for the costs of the petitioner, left $335.04, which the administratrix was by the decree directed to pay upon the plaintiff's claim. The referee found that out of the money that came into her hands the administratrix paid for funeral expenses, including burial lot and monument, $1,934.35, the expense of the monument being $1,400; also, for improvements upon real estate which descended to the two daughters, subject to her right of dower, $315.37; that she advanced to the daughter Helen $475.77; that she paid the plaintiff $335.04; that she retained for commissions and expenses of administration $247.25, and paid out the balance toward the funeral expenses of the daughter Helen; that it was understood between Helen and her mother and sister that the amount so paid to her should be applied toward her distributive share in her father's estate, and that the money was paid for such improvements and expenses of the funeral, including burial lot and monument, at the request of the

two daughters; that the latter expenses were excessive in amount, and that no more than $1,000 should be allowed for them. The referee, therefore, concluded that the sum lawfully paid out by the administratrix, including the commissions and expenses upon her accounting and the payment made to plaintiff pursuant to the surrogate's decree, was only $1,582.29, leaving for distribution between the widow and the two daughters $1,957.71.

The amount remaining due to the plaintiff upon the judgments was $675.09, for one-third of which the referee directed judgment against each of the defendants.

The fact that there had been no judicial settlement of the accounts of the administratrix in the Surrogate's Court furnishes no objection to the determination of this action on the merits. It is within the equitable powers of this court to require the personal representatives of deceased persons to render an account with a view to relief sought dependent upon such accounting. The jurisdiction of the surrogate in that respect is not exclusive but concurrent with that of this court. (*Rogers* v. *King*, 8 Paige, 210.)

In view of the limited amount of the estate of the decedent the conclusion of the referee was justified in that the amount paid for the monument was excessive, and that the sum reasonably applicable to the funeral expenses, including the burial lot and monument, did not exceed $1,000. (*Wood* v. *Vandenburgh*, 6 Paige, 277; *Patterson* v. *Patterson*, 59 N. Y. 574; *Owens* v. *Bloomer*, 14 Hun, 296; *Allen* v. *Allen*, 3 Dem. 524.)

The question arises whether by reason of that excessive expenditure any portion of the amount of it should in behalf of the plaintiff be treated as assets distributed or paid to the widow and next of kin. When six months after the completed publication of notice to creditors had expired, the administratrix had reason to suppose that no creditors existed whose claims had not been presented, and she was then at liberty to make distribution of the assets. Not having any "knowledge or notice of the claim of the plaintiff or his assignor," she, with the consent of the next of kin, put $1,400 into a monument. It must be assumed that in doing so they acted in good faith. Neither of them derived any pecuniary benefit from the expenditure, nor can the monument be deemed to have any commercial value. Under like circumstances it was held in

*O'Conner* v. *Gifford* (117 N. Y. 275) that a creditor who had failed to present his claim was estopped from charging the executor with liability to the extent of the moneys which he had expended for a purpose mentioned in the will and which was invalid as against the creditors of the testator.

So far as appears in the present case the attention of the widow or next of kin was not called to the claim in question until several years had elapsed after the time for presentation of claims pursuant to the notice to creditors had expired. This would have been no objection if the assets had been actually distributed or paid to the widow and next of kin, or had been invested in property in their behalf. By reason of *laches* of the owner or owners of the claim the administratrix was led to believe that none existed, and thereupon she, with the consent of the next of kin, who had the like understanding, expended the amount before mentioned for the monument. She was lawfully permitted to expend a reasonable sum for such purpose. The plaintiff is, therefore, estopped from effectually asserting that because such expense was excessive any of the money over and above the sum reasonably applicable thereto, which was expended for the monument constituted assets distributed or paid to the widow and next of kin for the purpose of his remedy sought by this action.

There remains for consideration the item of $475.77 paid to Helen on account of her distributive share of the assets, the item of $315.37 expended in improvements and repairs upon the real estate, and the item of $254 appropriated to pay funeral expenses of Helen, who died in 1886. Those sums were paid out by the widow with the consent of the defendant Cary, and that for the improvement of the realty by the consent of both her and Helen. Neither of the two sums last mentioned was appropriated to purposes within the purview of the authority of the administratrix, and, therefore, the widow and the defendant Cary, as one of the next of kin, may be treated as equally chargeable with having and disposing of those portions of the assets, and each equally with Helen chargeable for the amount so applied in making the improvements upon the real estate. As to creditors, Helen alone was responsible on account of the amount so received by her as her distributive share of the assets, including one-third of the amount so expended upon the real estate. It fol-

lows that as relates to the distribution of the assets which remain the subject of consideration the estate of Helen must be deemed chargeable with $580.90, the widow with $232.13, and the defendant Cary with $232.13. Their liability, respectively, is such that the sum which the plaintiff is entitled to recover against them must be apportioned amongst the defendants in proportion to the distributive share received by each of them. (Code Civ. Proc. § 1830.)

As the plaintiff has not appealed, the recovery against the personal representative of Helen M. Vick cannot be increased on this review.

On the basis before mentioned the proportionate share of the liability of each of the two defendants, Morton and Cary, to the plaintiff on his claim as of the time of the referee's report was made is $150.21.

No other question requires consideration.

The judgment should be reversed and a new trial granted, costs to abide the final award of costs, unless the plaintiff stipulates to reduce the recovery against each of the defendants Morton and Cary, exclusive of costs, to $150.21, and in that event the judgments as against those two defendants be so modified, and as modified affirmed, without costs of this appeal to any party, and thereupon the judgment against the other defendant should also be affirmed.

LEWIS and DAVY, JJ., concurred; WARD, J., not voting.

Judgment reversed and new trial granted, costs to abide the event, unless the plaintiff stipulates to reduce the recovery against each of the defendants Morton and Cary, exclusive of costs, to $150.21, and in that event the judgments against those two defendants be so modified, and as modified affirmed, without costs of this appeal to any party. The judgment against the other defendant affirmed.